**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KENTLIN HOPKINS,        )
       **Plaintiff,**      )
                    )
      **v.**           )     **C.A. No. 10-166 Erie**
                    )
**LT. APADACA, et al.,**     )
       **Defendants.**   )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that:

1. The DOC Defendants' partial motion to dismiss second amended complaint [ECF No. 38] be granted in part and denied in part;

2. The motion to dismiss or in the alternative for summary judgment filed by Defendant Dr. Jeffrey Moll [ECF No. 44] be granted;

3. Defendant Ireland's motion to dismiss second amended complaint [ECF No. 50] be granted; and

4. The motion to dismiss filed by Defendant Beverly O'Rourke, CRNP [ECF No. 60] be granted.

It is further recommended that, pursuant to the authority granted to courts in the Prison Litigation Reform Act, Plaintiff's claims against Defendants John Doe Supervisor, Lt. Bock, and "Supervisor" be dismissed for Plaintiff's failure to serve in accordance with Rule 4(m) of the Federal Rules of Civil Procedure.

### II.    REPORT

#### A.    Relevant Procedural and Factual History

On July 9, 2010, Plaintiff Kentlin Hopkins, a prisoner presently incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), initiated this

action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. [ECF No. 5]. He subsequently filed a supplement [ECF No. 6], an amended complaint [ECF No. 15], and a supplement to the amended complaint [ECF No. 16]. To avoid piecemeal litigation, several Defendants filed a motion for an order requiring Plaintiff to file a comprehensive complaint. [ECF No. 36]. In response to this motion, Plaintiff filed a second amended complaint, which supersedes all prior pleadings and is the operative complaint in this matter. [ECF No. 37].

Named as Defendants in the second amended complaint are: Dr. Jeffrey Moll, a psychiatrist under contract to provide psychiatric services to inmates at SCI-Forest ("Dr. Moll"); Beverly O'Rourke, CRNP (incorrectly identified in the second amended complaint as "Dr. Beverly O'Rourk"), a certified nurse practitioner at SCI-Forest ("O'Rourke"); and the following corrections officers at SCI-Forest: Lt. E. Apadaca, Lt. Burkhart, Lt. Bock,[1] Sgt. Nicholson, C.O. D. Straziser, C.O. Caratelli, C.O. Coleman, Capt. Riskus, Capt. S. Ireland, C.O. D. Barger, and C.O. R. Palmer. (All corrections officers other than Lt. Bock are hereafter collectively referred to as "DOC Defendants"). Also included as Defendants in the second amended complaint are two unnamed individuals referred to as "John Doe Supervisor" and "Supervisor," neither of whom has since been properly identified or served in this matter.

In his *pro se* second amended complaint, Plaintiff alleges that Defendants violated his constitutional rights as follows:

    1.    Defendant Apadaca allegedly violated Plaintiff's due process rights by placing him in the restricted housing unit ("RHU") "for no apparent reason." (ECF No. 37, Second Amended Complaint, at Section IV.C).

    2.    Defendants Burkhart and Nicholson "knowingly allow violations by stating two words quote you refused unquote." (Id.).

---

[1] According to the docket entries in this case, Lt. Bock was never served in this case, and no attorney has entered an appearance on his behalf. Furthermore, the second amended complaint does not contain any claim against Lt. Bock.

3.     Defendants Barger and Straziser allegedly refuse Plaintiff meals and refuse to allow him to be present at P.R.C. and misconduct hearings. (Id.).

4.     Defendants Riskus and Caratelli "continuously harass [Plaintiff] to submit to drug test." (Id.).

5.     Defendant Palmer allegedly refused Plaintiff food and asked "show anybody your penis lately?" (Id.).

6.     Defendant Moll "refuse[d] to acknowledge and treat [Plaintiff's] mental depression & bipolar reaction" (Id.).

7.     Defendant Straziser allegedly closed Plaintiff's arm in the wicket of his cell door, and Defendant Coleman allegedly ignored Plaintiff's complaints of pain and request for medical attention for his arm. (Id.).

8.     Defendant Barger placed Plaintiff on a diet consisting of peanut butter despite the fact that Plaintiff is a vegetarian, has high cholesterol, and maintains a "religious belief to not eat any meat." (Id.).  Plaintiff alleges further that Defendants Ireland and Apadaca were also aware that he was a vegetarian and had high cholesterol, yet allowed him to be served peanut butter. (Id.).

9.     Defendant O'Rourke allegedly informed Plaintiff that, although she was aware of his high cholesterol, she could "not do anything about the peanut butter" and, thus, "knowingly left [him] in a life threatening situation." (Id.).

As relief for his claims, Plaintiff seeks monetary damages.

On December 23, 2010, the DOC Defendants (other than Defendant Ireland)[2] filed a partial motion to the dismiss second amended complaint [ECF No. 38], seeking to have all claims dismissed for failure to state a claim upon which relief may be granted, except for Plaintiff's excessive use of force claim against Defendant Straziser arising from the wicket incident.  A separate partial answer to the second amended complaint was filed by the DOC Defendants as to the remaining excessive use of force claim. [ECF No. 39].

---

2

At the time the DOC Defendants' motion to dismiss was filed, Defendant Ireland had not yet been served.  After service was effectuated on her, Defendant Ireland filed her own motion to dismiss, essentially adopting and joining in the DOC Defendants' motion. [ECF No. 50].

On January 14, 2011, Defendant Dr. Moll filed a motion to dismiss or in the alternative for summary judgment [ECF No. 44], arguing that Plaintiff has failed to exhaust his administrative remedies with regard to his claims against Dr. Moll. On May 5, 2011, Defendant O'Rourke filed her own motion to dismiss [ECF No. 60], contending that Plaintiff has failed to state a claim against her upon which relief may be granted. Plaintiff has filed responses to all outstanding motions. [ECF Nos. 43, 48, 53, 66]. This matter is now ripe for consideration.

**B.    Standards of Review**

**1.    Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the *Twombly/Iqbal/Phillips* line of cases, as follows:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

**2.     Summary Judgment**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56©. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson, 477 U.S. at 248.  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 247-249.


### 3.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers"  Haines v. Kerner, 404 U.S. 519, 520 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will

consider facts and make inferences where it is appropriate.

### C.   Discussion

#### 1.   Exhaustion of Administrative Remedies

Defendant Dr. Moll argues that, with regard to Plaintiff's claims against him, Plaintiff

has failed to exhaust his administrative remedies in accordance with the requirements of the

Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides:

> no action shall be brought with respect to prison conditions under section
> 1983 of this title ... by a prisoner confined in any jail, prisons, or other
> correctional facility until such administrative remedies as are available
> are exhausted.

Id.[3]

The requirement that an inmate exhaust administrative remedies applies to all

inmate suits regarding prison life, including those that involve general circumstances as

well as particular episodes.  Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v.

Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

Administrative exhaustion must be completed prior to the filing of an action.  McCarthy

v. Madigan, 503 U.S. 140, 144 (1992).  Federal courts are barred from hearing a claim

if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113

F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir.

May 8, 1997).[4]  The exhaustion requirement is not a technicality, rather it is federal law

---

3

It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007)("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

4

which federal district courts are required to follow.  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[5]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is

---

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that ¢1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

5

There is no "futility" exception to the administrative exhaustion requirement.  Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'").  See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones v. Bock</u>, 107 U.S. at 217.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See <u>Booth v. Churner</u>, 206 F.3d 289, 293 n.2 (3d Cir. 1997), <u>aff'd</u>. 532 U.S. 731 (2001).

Here, in support of his contention that Plaintiff has failed to exhaust his administrative remedies, Defendant Dr. Moll has submitted copies of all grievances Plaintiff filed at SCI-Forest through the end of the 2010 calendar year. (<u>See</u> ECF No. 45, Exhibits A and B). A thorough review of these documents has confirmed that Plaintiff did not file any grievance concerning Defendant Dr. Moll's alleged failure to treat his depression and bi-polar disorder. As a result, Plaintiff has failed to exhaust his administrative remedies with regard to his only claim against Defendant Dr. Moll.

Nevertheless, Plaintiff counters that he recalls having been "placed on mental observation" during the months of February, July, and December 2009, and that he was not allowed "pens, paper, spoons, forks, grievance material etc." during these months. Thus, in essence, Plaintiff is arguing that administrative remedies were made unavailable to him during these months, which prevented him from filing timely grievances, presumably regarding Dr.

Moll's alleged failure to provide treatment.[6]  This argument, however, fails to withstand scrutiny.  First, Plaintiff's grievance records reflect that Plaintiff did, indeed, file grievances concerning other matters during the months of February and July 2009, in contravention of Plaintiff's claim that he was unable to file grievances during those months. (See ECF No. 45-1 at pp. 20, 22).  Second, Plaintiff's complaint against Defendant Dr. Moll is that he failed to provide mental health treatment to Plaintiff at any time.  As such, Plaintiff's claim is not based upon any particular event or series of events for which the fifteen day grievance-filing time requirement would apply.  Thus, Plaintiff's alleged inability to file a grievance during the month-long periods he was in "mental observation" did not preclude him from filing an appropriate grievance against Dr. Moll after he was released from his observation cell.  For these reasons, Plaintiff's argument that administrative remedies were not made available to him is unavailing.

Based on the foregoing, therefore, Defendant Dr. Moll's motion for summary judgment based upon Plaintiff's failure to exhaust administrative remedies should be granted.

## 2.    Due Process Claim Regarding RHU Placement

Plaintiff claims that Defendant Apadaca placed him in the RHU on February 16, 2010, "for no apparent reason," in violation of his due process rights.

To establish a due process claim under the Fourteenth Amendment, Plaintiff must demonstrate (I) the existence of a constitutionally protected liberty or property interest; and (ii)

---

[6]

The Third Circuit has held that interference with an inmate's attempts at exhaustion impact the availability of the administrative remedy process. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." ). See also McKinney v. Guthrie, 2009 WL 274159, at * 1 (3d Cir. Feb. 20, 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."); Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) ("Assuming security officials told Brown to wait for the termination of the investigation before commencing a formal claim, and assuming the defendants never informed Brown that the investigation was completed, the formal grievance proceeding required by DC-ADM 804 was never "available" to Brown within the meaning of 42 U.S.C. § 1997e.").

constitutionally deficient procedures by the state in its deprivation of that interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972). If there is no protected interest, there is no need to determine whether the alleged deprivation was without due process. Alvin v. Suzuki, 227 F.3d 101, 116 (3d Cir. 2000).

In response to Plaintiff's due process challenge, the DOC Defendants argue that no due process rights were violated because no liberty interest was at stake. Specifically, Defendants assert that "long periods of confinement under highly restrictive conditions have been held insufficient to trigger the protections of the Due Process Clause," citing Griffin v. Vaughn, 112 F.3d 703, 706-09 (3d Cir. 1997)(transfer to administrative custody with strict limits on property, visitation and out-of-cell activities does not implicate inmate's due process rights)(citations omitted). (ECF No. 40, Defendants' Brief, at p. 11). Additionally, the Supreme Court held in Sandin v. Conner, 515 U.S. 472 (1995), that "discipline in segregated confinement d[oes] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. In reaching this conclusion, however, the Sandin court "did not pronounce a *per se* rule." Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003).

"In deciding whether a protected liberty interest exists under Sandin, we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." Mitchell, 318 F.3d at 531-32, citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000). In applying these factors, the Third Circuit has reached differing conclusions, "reflecting the fact-specific nature of the *Sandin* test." Mitchell, 318 F.3d at 532, comparing, *inter alia*, Shoats, 213 F.3d at 144 (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited him from visiting the library or "participating in any education, vocational, or other organization activities," clearly implicated a protected liberty interest), with Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(seven months of disciplinary confinement did not implicate a liberty interest), and Griffin, supra.

Here, Plaintiff has not pled any facts to indicate that his liberty interests were implicated by his confinement in the RHU at SCI-Forest. Nothing in the complaint alleges any condition of confinement that was appreciably different from the conditions of other similarly situated inmates or that his time in restrictive custody has constituted an atypical scenario comparable to that experienced by the plaintiff in <u>Shoats</u>. In fact, the only hardship Plaintiff claims to have suffered as a result of his placement in the RHU is that, as a "short term inmate," his RHU status has hindered him from completing "things to be done before [he is] considered for parole." (ECF No. 43, Plaintiff's Memorandum, at p. 2). However, the granting of parole prior to the expiration of a prisoner's maximum term is not a constitutionally-protected liberty interest that is inherent in the Due Process Clause. <u>Greenholtz v. Inmates of Nebraska Penal and Correctional Complex</u>, 442 U.S. 1 (1979).

Because Plaintiff's confinement in RHU has not imposed an "atypical and significant hardship" on Plaintiff in relation to ordinary prison life, his placement in the RHU did not trigger a liberty interest, and no process was due even if the transfer resulted in a less favorable living situation. For these reasons, Plaintiff's due process claim against Defendant Apadaca should be dismissed.

### 3. Eighth Amendment Claim Arising from Denial of Food

Plaintiff claims that Defendants Barger and Straziser "are always looking to refuse me my meals," and that Defendant Palmer "refuses me food." (ECF No. 37, Second Amended Complaint at Section IV.C). In their brief in support of their partial motion to dismiss, the DOC Defendants state that Plaintiff "only actually alleges that he was denied two actual meals." (ECF No. 40, DOC Defendants' Brief, at p. 12). However, in his Memorandum in response to the DOC Defendants' motion to dismiss, Plaintiff clarifies that these same Defendants refused him food "on many occasions (more than once or twice)." (ECF No. 43, Plaintiff's Memorandum, at p. 2).

"'The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.' Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation.'" <u>Hennis v. Tedrow</u>, 2001 WL 1230337 at *14 (W.D.Pa. Mar. 31, 2011), <u>quoting</u> <u>Talib v. Gilley</u>, 138 F.3d 311, 214 n. 3 (5th Cir. 1998)(citations omitted). Here, the undeveloped record before the Court is insufficient to determine the amount and duration of the alleged food deprivation. Thus, taken as true, Plaintiff's allegations adequately set forth an Eighth Amendment claim against Defendants Barger, Straziser, and Palmer arising from their alleged refusal to give Plaintiff food, and the DOC Defendants' motion to dismiss the same should be denied.

### <u>4</u>. <u>Due Process Claim Regarding Refusal to Allow Plaintiff to Attend Misconduct or P.R.C. Hearings</u>

Plaintiff alleges that Defendants Barger and Straziser "refuse to allow me to be present to any and all P.R.C. and misconduct hearings," in violation of his due process rights, and that Defendants Burkhart and Nicholson have knowingly allowed such violations by stating that Plaintiff "refused" to be heard at such hearings. (ECF No. 37, Second Amended Complaint, at Section IV.C). Taken as true, these allegations are minimally sufficient to state a Fourteenth Amendment due process claim. Since the DOC Defendants have failed to move for dismissal of this claim, it should be allowed to proceed beyond the pleading stage.

### <u>5</u>. <u>Verbal Harassment</u>

Plaintiff alleges that Defendant Palmer verbally harassed him by asking "show anybody your penis lately?" (<u>Id</u>.). In addition, Plaintiff alleges that Defendants Riskus and Caratelli "continuosly [sic] threaten me to submit to drug testing." (<u>Id</u>.; ECF No 43, Plaintiff's Memorandum, at p. 5).

Even assuming the foregoing claims are true, it is well-settled that the use of words, no

matter how violent, is not actionable under 42 U.S.C. § 1983.  See Wright v. O'Hara, 2004 WL 1793018 at *7 (E.D.Pa. Aug. 11, 2004)("[w]here plaintiff has not been physically assaulted, defendant's words and gestures alone are not of constitutional merit")(citations omitted); MacLean v. Secor, 876 F.Supp. 695, 698-99 (E.D.Pa. 1995)("[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim"); Murray v. Woodburn, 809, F.Supp. 383, 384 (E.D.Pa. 1993)("Mean harassment ... is insufficient to state a constitutional deprivation")(listing cases).  Thus, Plaintiff's claims of verbal harassment and threats against Defendants Palmer, Riskus, and Caratelli do not amount to constitutional violations and should be dismissed for failing to state claims upon which relief may be granted.

### 6.    Deliberate Indifference to Serious Medical Needs Claims

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976).  "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (I) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[7] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk

---

[7]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979), <u>quoting</u> <u>Bowring v. Goodwin</u>, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Here, Plaintiff has raised two Eighth Amendment claims alleging deliberate indifference to his serious medical needs – one against Defendant Coleman, and one against Defendants O'Rourke, Ireland, Apadaca, and Barger. Each of these claims will be addressed in turn.

### a. Defendant Coleman

Plaintiff alleges that after Defendant Straziser allegedly closed his arm in the wicket of his cell door, Plaintiff pressed the medical emergency button in his cell and informed Defendant Coleman that he was in pain and required medical attention; nevertheless, Plaintiff claims that Defendant Coleman ignored his complaints, stating "you don't look like you are in any pain." (ECF No. 37, Second Amended Complaint, at Section IV.C). The DOC Defendants move to dismiss this claim based on their argument that "Plaintiff does not allege that he had suffered from a 'serious medical need' as defined by the cases, or even that he had suffered a

visible injury at all." (ECF No. 40, DOC Defendants' Brief, at p. 15).  This argument is unavailing.

Accepting Plaintiff's allegations as true, Defendant Coleman's alleged refusal to obtain medical treatment for Plaintiff after his arm was allegedly closed in the wicket of his cell door may be found to have been a denial of a reasonable request for treatment that exposed Plaintiff to unnecessary suffering.  Durmer, 991 F.2d at 68.  Accordingly, the DOC Defendants' motion to dismiss this claim should be denied and this claim should be allowed to proceed beyond the pleading stage.

### b.  Defendants Barger, Apadaca, and Ireland

Plaintiff alleges that Defendant Barger placed him on a diet including peanut butter, which Plaintiff characterizes as being "extremely high in cholesterol," even though Plaintiff allegedly informed him that he is a vegetarian and is taking medication for high cholesterol. (ECF No. 37, Second Amended Complaint, at p. 4).  Plaintiff alleges further that Defendants Apadaca and Ireland were aware of these facts, but did nothing.  (Id.).  Based on the foregoing, Plaintiff claims that each of these Defendants was deliberately indifferent to his serious medical needs.  However, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Here, Plaintiff clearly indicates that he was "under a doctor's care" for his high cholesterol. (ECF No. 37, Second Amended Complaint, at p. 4).  However, there is no allegation that the doctor was mistreating, or not treating, Plaintiff's cholesterol condition, nor is there any allegation that Defendants Barger, Ireland, and/or Apadaca knew or had reason to believe that any such mistreatment, or non-treatment, was occurring.  Thus, Plaintiff cannot establish an Eighth Amendment deliberate indifference claim against any of said Defendants, and such

claims should be dismissed.

### c.      Defendant O'Rourke

Plaintiff also alleges that, on October 29, 2010, Defendant O'Rourke responded to Plaintiff's sick call request regarding his diet by stating, "I am aware of your cholesterol problem but I can not do anything about the peanut butter." (Id.).  As a result, Plaintiff claims that Defendant O'Rourke "knowingly left [him] in a life threatening situation."  (Id.).  This claim is specious, at best.

The record before the Court reflects that Plaintiff, as a vegetarian inmate, chose the option of selecting an alternate protein entree at lunch and dinner, and that a variety of alternate protein selections are provided, with peanut butter being served only once a week. (ECF No. 45-2 at p. 2).  In addition, the record reflects that peanut butter is a vegetable protein and does not contain any cholesterol, which is only found in animal products. (Id.).  Thus, Plaintiff's claim regarding his diet is based on nothing more than his dissatisfaction with the inclusion of peanut butter, due to his mistaken belief that it is high in cholesterol.  Such a claim is not sufficient to establish an Eighth Amendment violation.  Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976)(holding that a prisoner's disagreement with a course of medical treatment does not sustain a cognizable Eighth Amendment claim).  Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim against Defendant O'Rourke should be dismissed.

### 7.      Free Exercise of Religion Claim

Plaintiff alleges that it is his "religious belief to not eat any meat," and that Defendants Barger, Apadaca, Ireland, and O'Rourke somehow violated this belief by allowing him to remain on a "high cholesterol diet."  However, as noted above, the record clearly reflects that Plaintiff chose the option of receiving alternate protein entrees, such as peanut butter, in recognition of

the fact that he is a vegetarian. Thus, rather than conflicting with Plaintiff's professed "religious belief," the alternate protein diet actually accommodates such belief. Accordingly, Plaintiff's First Amendment free exercise of religion claim is baseless and should be dismissed.

### 8.    Prison Litigation Reform Act

The Prison Litigation Reform Act provides that:
> (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A. Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e©, the district courts are required, either on the motion of a party or sua sponte, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory provisions with respect to actions brought by prisoners who are proceeding in forma pauperis. See 28 U.S.C. §1915(e)(2)[8]. Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. See, e.g., Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma

---

[8]

Title 28 U.S.C. §1915(e)(2) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

pauperis actions that are frivolous or fail to state a claim."). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e® the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

As noted earlier, the following Defendants were never served in this case, in contravention of this Court's orders, and none of them has had an attorney enter an appearance on his or her behalf: John Doe Supervisor, Lt. Bock, and "Supervisor." As a result, these Defendants should be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as they were not served within 120 days of the date(s) they were named as Defendants in this case.

## III. CONCLUSION

It is respectfully recommended that:

1. The DOC Defendants' partial motion to dismiss second amended complaint [ECF No. 38] be granted in part as to the following claims:

   a. Plaintiff's Fourteenth Amendment Due Process claim against Defendant Apadaca;

   b. Plaintiff's Eighth Amendment verbal harassment claims against Defendants Palmer, Riskus, and Caratelli;

   c. Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Barger and Apadaca; and

   d. Plaintiff's First Amendment free exercise of religion claim.

2. The DOC Defendants' partial motion to dismiss second amended complaint [ECF No. 38] be denied as to the following claims:

   a. Plaintiff's Eighth Amendment claim against Defendants

Barger, Straziser, and Palmer regarding the alleged denial of food; and

b.  Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Coleman.

In addition, Plaintiff's Fourteenth Amendment due process claim against Defendants Barger and Straziser, regarding their alleged refusal to allow Plaintiff to attend P.R.C. and misconduct hearings, should be allowed to proceed due to the DOC Defendants' failure to move for dismissal of such claim.

3.  The motion to dismiss or in the alternative for summary judgment filed by Defendant Dr. Jeffrey Moll [ECF No. 44] be granted;

4.  Defendant Ireland's motion to dismiss second amended complaint [ECF No. 50] be granted; and

5.  The motion to dismiss filed by Defendant Beverly O'Rourke, CRNP [ECF No. 60] be granted.

It is further recommended that, pursuant to the authority granted to courts in the Prison Litigation Reform Act, Plaintiff's claims against Defendants John Doe Supervisor, Lt. Bock, and "Supervisor" be dismissed for Plaintiff's failure to serve in accordance with Rule 4(m) of the Federal Rules of Civil Procedure.

In addition, based on the foregoing, the following Defendants should also be terminated from this case:  Apadaca, Burkhart, Nicholson, Dr . Moll, Ireland, O'Rourke, Riskus, and Caratelli.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of some appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  August <u>3</u>, 2011

cc:     The Honorable Sean J. McLaughlin
        United States District Judge