IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENTLIN HOPKINS, | ) | |
| Plaintiff, | ) | C.A. No. 10-166 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge McLaughlin |
| LT. APADACA, et al., | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 80] be granted.

**II.     REPORT**

**A.     Relevant Procedural and Factual History**

On July 9, 2010, Plaintiff Kentlin Hopkins, a prisoner presently incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), initiated this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. [ECF No. 5]. He subsequently filed a supplement [ECF No. 6], an amended complaint [ECF No. 15], and a supplement to the amended complaint [ECF No. 16]. To avoid piecemeal litigation, several Defendants filed a motion for an order requiring Plaintiff to file a comprehensive complaint. [ECF No. 36]. In response to this motion, Plaintiff filed a second amended complaint, which supersedes all prior pleadings and is the operative complaint in this matter. [ECF No. 37].

Named as Defendants in the second amended complaint are: Dr. Jeffrey Moll, a psychiatrist under contract to provide psychiatric services to inmates at SCI-Forest ("Dr. Moll"); Beverly O'Rourke, CRNP (incorrectly identified in the second amended complaint as "Dr.

1

Beverly O'Rourk"), a certified nurse practitioner at SCI-Forest ("O'Rourke"); two unnamed individuals referred to as "John Doe Supervisor" and "Supervisor;" and the following corrections officers at SCI-Forest: Lt. E. Apadaca, Lt. Burkhart, Lt. Bock, Sgt. Nicholson, C.O. D. Straziser, C.O. Caratelli, C.O. Coleman, Capt. Riskus, Capt. S. Ireland, C.O. D. Barger, and C.O. R. Palmer (the corrections officers are herein collectively referred to as "DOC Defendants").

On December 23, 2010, the DOC Defendants filed a partial motion to dismiss second amended complaint [ECF No. 38], seeking to have all of Plaintiff's claims dismissed for failure to state a claim upon which relief may be granted, except for an excessive use of force claim arising from Plaintiff's allegation that Defendant Straziser closed his arm in the wicket of his cell door. A separate partial answer to the second amended complaint was filed by the DOC Defendants as to the remaining excessive use of force claim. [ECF No. 39].

On January 14, 2011, Defendant Dr. Moll filed a motion to dismiss or in the alternative for summary judgment [ECF No. 44], arguing that Plaintiff failed to exhaust his administrative remedies with regard to his claims against Dr. Moll. On May 5, 2011, Defendant O'Rourke filed her own motion to dismiss [ECF No. 60], contending that Plaintiff failed to state a claim against her upon which relief may be granted.

On August 3, 2011, this Court issued a Report and Recommendation recommending that Plaintiff's claims against Defendants Dr. Moll and O'Rourke be dismissed, and that all of Plaintiff's claims against the DOC Defendants be dismissed, except for: (i) Plaintiff's Eighth Amendment claim against Defendants Barger, Straziser, and Palmer arising from their alleged refusal to provide Plaintiff food; (ii) Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Coleman arising from his alleged refusal to obtain medical treatment for Plaintiff after his arm was allegedly closed in the wicket of his cell door; and (iii) Plaintiff's Fourteenth Amendment due process claim against Defendants Barger and Straziser arising from their alleged refusal to allow Plaintiff to attend P.R.C. and misconduct hearings. [ECF No. 67].

In addition, this Court recommended that unnamed Defendants "John Doe Supervisor" and "Supervisor" be dismissed due to Plaintiff's failure to serve them in accordance with Rule 4(m) of the Federal Rules of Civil Procedure.

On September 2, 2011, District Judge Sean J. McLaughlin issued a Memorandum Order adopting this Court's Report and Recommendation and terminating Defendants Apadaca, Burkhart, Nicholson, Ireland, O'Rourke, Riskus, Caratelli, Bock, Dr. Moll, "John Doe Supervisor," and "Supervisor" from this case. [ECF No. 72]. As a result, the only claims remaining in this case are: (i) the Eighth Amendment claim against Defendants Barger, Straziser, and Palmer, arising from their alleged refusal to provide Plaintiff food; (ii) the Eighth Amendment deliberate indifference claim against Defendant Coleman; (iii) the Fourteenth Amendment due process claim against Defendants Barger and Straziser; and (iv) the Eighth Amendment excessive use of force claim against Defendant Straziser, to which an answer has been filed.

The parties have since completed their discovery and the remaining Defendants have now filed a motion for summary judgment as to Plaintiff's remaining claims against them. [ECF No. 80]. Despite being given ample time to do so, Plaintiff has failed to file a response. This matter is now ripe for consideration.

### B. Standards of Review
#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out

3

specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion
#### 1. Eighth Amendment Claim Arising from Denial of Food

Plaintiff claims that Defendants Barger and Straziser "are always looking to refuse me my meals," and that Defendant Palmer "refuses me food." (ECF No. 37, Second Amended

Complaint at Section IV.C).

"'The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.' Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation.'" Hennis v. Tedrow, 2011 WL 1230337 at *14 (W.D.Pa. Mar. 31, 2011), quoting Talib v. Gilley, 138 F.3d 211, 214 n. 3 (5th Cir. 1998)(citations omitted). At the pleading stage, this Court concluded that "the undeveloped record ... [was] insufficient to determine the amount and duration of the alleged food deprivation." [ECF No. 67, Report and Recommendation, at p. 14]. Thus, Plaintiff's allegations were found to have adequately set forth an Eighth Amendment claim against Defendants Barger, Straziser, and Palmer arising from their alleged refusal to give Plaintiff food.

During his deposition in this case, Plaintiff had the opportunity to clarify the number of times each Defendant allegedly refused to give him food:

> Q. ... How many times did you file a grievance about being denied a food tray?
>
> A. Most of my grievances was on CO Straziser.
>
> Q. Okay.
>
> A. Maybe twice I filed a grievance of not receiving food trays.
>
> Q. And were those both on CO Straziser?
>
> A. One was on Barger ─ CO Barger and the other one was on Straziser.
>
> Q. In addition to those times, how many times were you not given a food tray during that roughly 18 months or so that you were in the restricted housing unit?
>
> A. CO Straziser did it maybe two or three times, and CO Barger did it once or twice.
>
> Q. So that includes the grievances you filed, as Barger did it maybe one other time that you didn't grieve, and Straziser did it maybe two times that you didn't grieve?

6

> A. He did it maybe one time that I didn't grieve. I'm sure there were two grievances.
>
> Q. On Straziser. So a total of two or three times that Straziser did it and a total of one or two times that Barger did it?
>
> A. Yes.
>
> Q. And what about Palmer?
>
> A. He was more like a recreation officer, just come through in the morning, wasn't down there too much,....
>
> Q. So Palmer didn't deny you a food tray, he was involved in some of the other claims in your lawsuit?
>
> A. He wouldn't let me see the PRC or escort ─ wouldn't take me to hearings and tell them I refused.
>
> Q. Okay. I'll get to that shortly here. Were these times that they denied you food over these 18 months, were they spread out over the time you were in there, ...?
>
> A. It was like two months.
>
> Q. It was over a period of about two months?
>
> A. Yeah.

(ECF No. 81-1, Plaintiff's deposition transcript, at pp. 17-19 (internal pp. 15-17)).

Based on the foregoing testimony, it is apparent that Defendant Palmer did not deny Plaintiff any meals as originally alleged. Thus, summary judgment should be granted in his favor on this claim.

As to Defendants Straziser and Barger, Plaintiff is essentially alleging that they collectively denied him food on, at most, five occasions over an approximate period of two months – two to three times by Defendant Straziser and one to two times by Defendant Barger. In Talib, the Fifth Circuit found that the plaintiff's allegations that he missed about fifty meals in five months and lost about fifteen pounds were not enough to demonstrate that he was "denied anything close to a minimal measure of life's necessities." Talib, 138 F.3d 211, 214 n. 3. In particular, the Talib court opined that "[m]issing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period." Id. The alleged

deprivation Plaintiff claims in this case, five meals in two months, or roughly one out of every twelve meals, pales in comparison. Thus, the Court finds that Plaintiff has failed to demonstrate that Defendants Straziser and Barger denied him the "minimal civilized measure of life's necessities," which is required to establish an Eight Amendment violation. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Accordingly, summary judgment should also be entered in favor of Defendants Straziser and Barger on Plaintiff's Eighth Amendment food deprivation claim.

### 2. Excessive Use of Force Claim

Plaintiff claims that Defendant Straziser used excessive force against him when he allegedly closed Plaintiff's arm in the wicket of his cell door on July 16, 2010.

"In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), quoting Whitley v. Albers, 475 U.S. 312, 321 (1986). The central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). However, objectively *de minimis* uses of physical force are excluded from constitutional recognition, provided that the use of force is not "'repugnant to the conscience of mankind.'" Whitley v. Albers, 475 U.S. 312, 327 (1986), quoting, Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Reyes v. Chinnici, 54 Fed. Appx. 44, 48 (3d Cir. 2002)("[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically").

During his deposition in this case, Plaintiff offered the following account of Defendant

8

Straziser's alleged actions on July 16, 2010, when Defendant Straziser and another corrections officer identified as "CO Reagle" attempted to deliver Plaintiff a lunch food tray in the RHU:

> Q. And when they came to your cell, what happened?
>
> A. CO Reagle was the lead officer. He came to my cell door, opened up the slot and gave me a cup and a piece of fruit. I think it was a banana. And CO Straziser came behind Reagle. He got upset with Reagle and walked off. Then he came back to my cell, told me to take the paper off the light. He said I was in wicket violation, I said the wicket is already open. And he went to close the slot without giving me a tray. I put my arm in to keep him from closing it, and instead of him notifying a sergeant or a lieutenant, he tried to close the wicket with my arm in it.
>
> Q. And what happened then?
>
> A. I wouldn't move my arm, so the wicket came back open....
>
>          \*         \*         \*
>
> Q. Okay. And then where did the wicket hit you when he tried to close it?
>
> A. My shoulder, arm.
>
> Q. Hit you in the —
>
> A. He pinched my shoulder and armpit up the side trying to lock my arm in.
>
> Q. And your whole arm was sticking out of the wicket at that point?
>
> A. Yes.
>
> Q. And did you keep your arm out of the wicket at that point?
>
> A. I didn't move it.
>
>          \*         \*         \*
>
> Q. And once he tried to close it that time when it pinched up into your armpit and shoulder, is that when he then let it fall back open and left?
>
> A. Yes.

(ECF No. 81-1, Plaintiff's deposition transcript, at pp. 34-37 (internal pp. 32-35)).

Shortly after the incident at issue, Plaintiff filed a grievance against Defendant Straziser. (ECF No. 81-3 at p. 4). This grievance was investigated by Security Lieutenant R. Duncan, who conducted interviews of both Plaintiff and Defendant Straziser on August 4, 2010, which were summarized in memoranda prepared by Lt. Duncan. (ECF No. 81-3 at pp. 23, 26). During his interview, Plaintiff reportedly stated that Defendant Straziser would not give him his food tray because his cell light was covered, and when Defendant Straziser "pulled out keys to lock the wicket, [Plaintiff] put his arm out of the wicket to prevent it from securing." (ECF No. 81-3 at p. 23). When Lt. Duncan asked Plaintiff if he complied with Defendant Straziser's order to uncover his cell light, Plaintiff reportedly said that he "refused to uncover them and that there should not have been a problem with giving him a tray because the wicket was already open." (Id.). Plaintiff then stated that "once his arm was out of the opening Officer Straziser then pushed harder pinching his arm between the wicket and the door." (Id.). During his interview, Defendant Straziser stated that he ordered Plaintiff to uncover his cell light two times, yet Plaintiff refused both orders. (ECF No. 81-3 at p. 26). Defendant Straziser continued that he then attempted to close the wicket door, at which time Plaintiff stuck his arm through the opening. (Id.). Defendant Straziser reported that he stepped back from Plaintiff's cell when Plaintiff shoved his arm through the wicket, and did not continue to push on the wicket while Plaintiff's arm was in the opening, as Plaintiff contends. (Id.). Defendant Straziser has submitted a Declaration in this proceeding essentially reaffirming the statement he gave to Lt. Duncan. (ECF No. 81-2).

After interviewing both parties, Lt. Duncan reviewed a DVD containing video footage of the incident, which he found to have supported Defendant Straziser's statement. According to Lt. Duncan's investigative report, the DVD showed that both Defendant Straziser and Reagle stepped away from Plaintiff's cell at the same time when Plaintiff shoved his arm through the wicket. (ECF No. 81-3 at p. 30). This Court has had an opportunity to review the DVD video

10

footage and concurs with Lt. Duncan's finding. (See ECF No. 83 and accompanying DVD submitted to this Court).

It is apparent from the evidence of record that Defendant Straziser's alleged act of closing the wicket door on Plaintiff's arm was largely inadvertent, and that the degree of force used was "so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." Reyes, 54 Fed. Appx. at 48. In fact, allegations of far more patently intentional force than Plaintiff has alleged have been deemed *de minimis* and dismissed by the courts. See, e.g., Reyes, 54 Fed. Appx. at 48 (corrections officer punched inmate in the shoulder to avoid being spit on); Thomas v. Ferguson, 361 F.Supp.2d 435, 439-41 (D.N.J. 2004)("[e]ven if proven to be true and for no necessary purpose, Defendants' alleged conduct... does not meet the Constitutional standard for a claim of a malicious and sadistic use of force 'repugnant to the conscience of mankind,'" where inmate alleged he was punched and shoved by corrections officers); Wilson v. Reinhart, 2003 WL 21756393 (D.Del. Jul. 29, 2003)(officer sprayed inmate in the face with mace).

Based on the foregoing, summary judgment should be entered in favor of Defendant Straziser on Plaintiff's excessive use of force claim.

### 3. Deliberate Indifference to Serious Medical Needs Claims

Plaintiff alleges that after Defendant Straziser allegedly closed his arm in the wicket of his cell door, Plaintiff pressed the medical emergency button in his cell and informed Defendant Coleman that he was in pain and required medical attention; nevertheless, Plaintiff claims that Defendant Coleman ignored his complaints, stating "you don't look like you are in any pain." (ECF No. 37, Second Amended Complaint, at Section IV.C). As a result, Plaintiff claims that Defendant Coleman was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

"In order to establish a violation of [the] constitutional right to adequate medical care,

evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Defendants argue that Plaintiff's claim fails because he cannot establish either a serious medical need or deliberate indifference. The Court agrees.

The evidence of record simply fails to establish that Plaintiff had a serious medical need to which Defendant Coleman was deliberately indifferent. According to Plaintiff's deposition testimony, his arm was "aching" and "stiff" for two to three days and had "swelling" for four to five days after the wicket incident. (ECF No. 81-1, Plaintiff's deposition transcript, at p. 40 (internal p. 38)). The skin on his arm was not broken in any way. (Id. at p. 42 (internal p. 40)). Plaintiff did not submit a sick call slip requesting to be seen by the medical staff after the incident, and during a physical examination two or three days later, Plaintiff did not even mention the alleged arm injuries because his arm "wasn't really bothering [him] too much." (Id. at p. 41-42 (internal p. 39-40)). Moreover, at or around the time Plaintiff called for Defendant Coleman, Plaintiff was sticking his arms and legs through the wicket opening in an attempt to knock over a protective shield that had been placed in front of his cell door. (See ECF No. 83, DVD ). Thus, Plaintiff's alleged injuries to his arm were not "so obvious that a lay person would

easily recognize the necessity for a doctor's attention." Lanzaro, 834 F.2d at 347.

Taken as a whole, the record evidence fails to support Plaintiff's claim of deliberate indifference to a serious medical need, and summary judgment should be entered in favor of Defendant Coleman on such claim.

### 4. Due Process Claim Regarding Refusal to Allow Plaintiff to Attend Misconduct or P.R.C. Hearings

Plaintiff alleges that Defendants Barger and Straziser "refuse to allow me to be present to any and all P.R.C. and misconduct hearings," in violation of his due process rights. During his deposition, Plaintiff clarified that a corrections officer identified as "CO Robinson" failed to escort him to one misconduct hearing in the fall or winter of 2010, and that he was not allowed to attend quarterly PRC hearings for one year. (ECF No. 81-1, Plaintiff's deposition transcript, at pp. 28, 31-32 (internal pp. 26, 29-30)). Since Plaintiff has failed to present any testimony or evidence implicating either Defendant Barger or Defendant Straziser in the alleged refusal to permit him to attend the one misconduct hearing in late 2010, summary judgment should be granted in favor of Defendants Barger and Straziser insofar as Plaintiff's due process claim pertains to his lack of attendance at said hearing. Thus, Plaintiff's due process claim should be limited to Defendants' alleged refusal to allow him to attend quarterly PRC hearings for one year, which allegedly resulted in Plaintiff's continued confinement in the RHU.

To establish a due process claim under the Fourteenth Amendment, Plaintiff must demonstrate (i) the existence of a constitutionally protected liberty or property interest; and (ii) constitutionally deficient procedures by the state in its deprivation of that interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972). If there is no protected interest, there is no need to determine whether the alleged deprivation was without due process. Alvin v. Suzuki, 227 F.3d 101, 116 (3d Cir. 2000).

The Supreme Court has held that a prisoner's state created liberty interest is limited to those situations that impose an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In Young v Beard, 227 Fed. App'x. 138 (3d Cir. 2007), the Third Circuit held that an inmate's confinement in disciplinary custody for a period of 930 days was not sufficient to show a deprivation of a cognizable liberty interest. Id. at 141. In so holding, the Young court noted that the plaintiff had "failed to state facts or submit evidence showing that he was subject to conditions in disciplinary confinement that [met] the Sandin standard." Id.

Here, in the same way, Plaintiff's non-existent allegations concerning the conditions of his comparatively brief 608 day stay (as compared to the 930 days in Young) in disciplinary custody fail to establish a deprivation of a cognizable liberty interest. See Scerbo v. Lowe, 326 Fed. App'x. 652, 656 (3d Cir. 2009)(eighteen month period of confinement in maximum security custody did not implicate a protected liberty interest); Mearin v Vidonish, 2009 WL 5166258 at *4 (W.D.Pa. Dec. 29, 2009)(cumulative period of 599 days in disciplinary custody insufficient to establish deprivation of liberty interest). Thus, any alleged flaws in the PRC review process did not deny Plaintiff his procedural due process rights because the result of the process – continued confinement in disciplinary custody – did not deprive him of a liberty interest. See Nifas v Coleman, 2012 WL 707063 at *17 (W.D.Pa. Feb 9, 2012)("In the case of disciplinary or administrative custody, if the inmate had no protected liberty interest in remaining free of such custody, then the inmate was owed no process, in the form of hearings or otherwise, before or during his placement"); Mearin at *4. Accordingly, summary judgment should be entered in favor of Defendants on Plaintiff's due process claim.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [ECF No. 80], be granted.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written

objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: May 9, 2012

cc: The Honorable Sean J. McLaughlin
United States District Judge